Mr. Walker is a career offender with a long history of bank robberies. But for his latest two bank robbery convictions, he has now twice received a sentence of no additional prison time beyond the 33 days he's already served in pre-trial detention. This is now the second time this case has been before the court. The first time, in Walker 1, the court sent the case back to the district court for resentencing with a mandate to impose a sentence that included an additional term of imprisonment. Instead, on remand, the district court analyzed the sentencing factors de novo while disregarding Walker 1. Indeed, that is the question before us, whether in fact the mandate did say that. And what in it suggests to you that it did? The court didn't say, give him prison in Walker 1. And in fact, in answering that question, why don't you contrast the certainty that we had in our Webb case where the court remanded and said, give him a sentence within this range. That's pretty darn clear. I didn't see anything approaching that in Walker 1. Yes, it's true that the court did not specify a range to impose. And we believe that's in part because it wanted to give the district court discretion on resentencing to consider under Pepper any further rehabilitative factors. Go ahead, please. I'm sorry. Go ahead. We believe that the concluding sentence in Walker 1 remands consistent with this opinion. There are a number of places within the decision itself where the court specifically mentions prison time. It mentioned prison time on the existing record that was present at that time. And the court placed no limits on what the court below on remand could consider in making its decision, did it? It didn't. But we believe that the clear import of Walker 1 is that a sentence of no prison time was substantively unreasonable. And there are some places within the decision. By declining to impose any prison time, the district court effectively failed to give any weight to the congressional values of punishment, general deterrence, incapacitation, respect for the law, and avoidance of unwarranted sentencing disparities. The court also said 57 months of incarceration in Freedman was an unreasonably light sentence. Mr. Walker's 33 days in pretrial detention was also unreasonably light. And then the court sent it back for a de novo hearing. It never explicitly said, as it did in Webb, you must give him prison time. There's never any reference to that at all. Well, we read the court's, it is true that the court did not specify a range. We read the court's decision in Walker 1 as specifying that no prison time was substantively unreasonable. Well, it spoke of, at the time, it was time served, right? That was all that was at play. And at one point, I guess the court said, if you give him time served, that's substantively unreasonable. That language is in Walker 1, right? Well, I believe the language in Walker 1 is more specific. It says, by declining to impose any prison time. You're not considering these factors. I understand that. But there's another passage where the court speaks of time served. And, of course, he didn't get time served on the second go-round. But is it, would you agree that our precedent requires specificity in terms of the limitation under the remand rule? The default is a de novo hearing. We would agree with that. And, again, we read the decision in Walker 1 as specifying only that a sentence of no prison time was substantively unreasonable. We concede that this court, as was appropriate, left it to the discretion of the district court to weigh the factors on remand, giving them appropriate weight, and fashion a new sentence that included, at a minimum, some prison time. The district court didn't do that. Why wouldn't home confinement be, although not prison lenient, why wouldn't that be a surrogate or substitute for, you know, prison time, especially when you look at the record holistically about the offender characteristic, et cetera? Well, the home confinement, there are two points about that. One, it was only two years. Two, it was riddled with exceptions. He basically has the chance to live, he can go to work, he can go to recovery meetings. There are numerous exceptions in it that make it very different from a sentence of incarceration where Mr. Walker would not be able to do any of those things. Really, to boil down your argument, the district court had a binary choice, and that was some prison time. He had no choice, actually. He had to impose some prison time based on Walker 1, and he imposed no prison time, although he added a few additional factors that weren't in the first sentencing. What's the right number? I know you've advocated a number in your brief, and we know what the range is. And, you know, I've been on, you know, two of these cases recently, and, you know, trying to come up with the algorithm that takes us from substantively unreasonable to substantively reasonable is no easy task. I mean, would six months been enough here, 12 months, 24? You know, I know we're engaged in speculation, but you've lived with this case. And what would the government's position to be what the minimum time here would be where you wouldn't appeal? Well, I do want to clarify that what the court is actually faced with is a sentence of no prison time. And so our position is that that is substantively unreasonable. I would point the court to the decision in Walker 1 again where it compared the case to Friedman. Friedman had the exact same sentencing guideline range. The court compared and contrasted the histories and the rehabilitation between the two defendants. It found that Friedman was a reasonable. Is that still the best comparator for this case, Friedman? We believe it is. Nothing has really changed in this case since Walker 1 other than Mr. Walker has, depending on the time, he now has three years of sobriety. I believe he had about a year and a half when Walker 1 was decided. And you're discounting that. I mean, nothing's changed. The passage of time, you know, that I guess demonstrates additional rehabilitation. It does demonstrate additional rehabilitation. And that's why our position is that it was appropriate for this court to remand the case to the district court with a mandate to impose some prison time but to not specify because Pepper does make it clear that additional rehabilitation is a factor to consider. And the court was free to consider that factor. But none of the other factors have changed. Going, well, there's a healthy record that exists in this case now that didn't exist in this case before. And going back to the recent Barnes case that was submitted as supplemental authority, there seems to be strong language in Barnes to the effect that if the court provides a strong record and gives substantive reasons for what it's doing, then it creates, it gives itself a considerable leeway to make the decision that it's going to make. And so, number one, speak to Barnes and how that should impact this case. And then I want to go back to this question of the home detention. Well, I think there are a number of significant differences between this case and the recent decision in Barnes. The biggest being Barnes, the initial remand was procedural reasonableness, not substantive. And so the district court on remand in Barnes did not have the benefit of Walker 1. This court has already decided Walker 1. It already made a determination as to substantive reasonableness. And so that limited the discretion of the district court on remand in this case in a way that was simply not applicable in Barnes. My second point about Barnes is that there, in both the initial sentence and the resentencing, the defendants received prison time. In fact, on the first remand, the district court actually doubled the prison sentences for both of the defendants. And in this case, the defendant did not get the same sentence that he got before. He got two years of home detention. And I would note that the guidelines treat home detention as a substitute for imprisonment. So it is not a small matter that he got two years of home detention. And speak to the question of the language you use, like exception riddled. Well, aren't these standard conditions? Well, I don't see him going out on Friday night partying. I mean, they're pretty standard conditions. He goes to work. He goes to church, which is important to his sobriety and important to him not recidivating. What else? Well, it's true that he may not be able to go out partying on a Friday night, but he is still allowed to do the things that most of us do in our regular lives. He's got standard conditions of home detention. Well, our submission is still that that is not the same as actual time spent in prison. And even if it is some sort of substitute, going back to your question, it's still only two years. And so as we believe the court should take Freedman as a benchmark, in Freedman the sentence was 57 months. The Freedman defendant was unremorseful. The Freedman defendant did not have the basis of record of rehabilitation that this defendant has. It seems to me that based upon the record we have here, what is it in Freedman you view as being so closely aligned with this case, despite the fact he was a bank robber? Well, I would point out that it's not just me. It's this court and Walker One which compared this case to Freedman. I'm asking for your argument now, please. Well, it is true that Mr. Walker has shown more remorse, but his criminal history, I believe he has seven convictions for bank robbery. He has admitted to more than a dozen. He has controlled substance offenses. His criminal history is certainly as bad as, if not worse, than the defendant in Freedman. Let me ask you a question on where we go from here, which is kind of where the Chief Judge was taking you, and I'm not sure I got an answer. I understand the opinion in Walker One concludes reversed and remanded for resentencing consistent with this opinion, and then in the paragraph immediately before that in the conclusion section, it has this language. We conclude that 33 days in pretrial detention constitutes an unreasonably short sentence. And so certainly Walker One knocked out the 33 days time served. But what if this went back and the district court said, all right, 30 days, report for incarceration for 30 days to be followed by two years of home confinement. Would you be right back here? Because that is such a huge variance from what the guideline recommends. Well, it is, and if that's what happened, I suppose we'd have to look at the case and make a decision as to that. We are not asking for this court to – what we're asking for is a determination that a sentence of no prison time is substantively unreasonable, and we're also asking for remand to a different district court judge on the belief that a different judge would look at the factors and weigh them differently and arrive at an appropriate sentence. Do you contend that in the lengthy district court opinion, which at least purports to go through all of the 3553A factors, that the district court somehow is deficient in addressing 3553A as compared to Barnes or any other recent case? Well, Barnes, my understanding, having read it last night, is that there is some overlap between procedural and substantive reasonableness. We would say that whether the district court looked at all the factors is a procedural reasonableness question, and it did issue a 61-page decision addressing all those factors, but that still leaves open whether the ultimate sentence arrived at is substantively reasonable. Right, and that's an abusive discretion. I mean, we deal with that all the time. We were just dealing with that in the first case. So, you know, that's what appellate judges do, right? And, you know, coming back to Judge Philp's question and Barnes, Judge Bacharach wrote what I think is a quite powerful dissent in that case and tries to lay out a path towards evaluating these cases. And you can see from the dialogue there's a bit of back and forth about whether this is art or science. And, you know, the government's put forth some percentage, a percentage comparison for a variance is one way to look at it. I suppose you can look at cases from around the country and compare those, which is what Judge Bacharach did. And, you know, I have a lot of sympathy for that because I'd rather have an empirical-based approach to these kind of cases. This one's a huge variance, right? It's what, 99 and a 0.9 percent reduction. So, you know, that probably requires a pretty robust explanation by our district, our sentencing judge. And he tried to do it here. I mean, 60 pages it was, and he wasn't, you know, blowing off a remand. I don't know, was there a couple-day hearing with this? And, you know, he cites two more studies than I knew existed on sentencing. But, you know, where did he go off the tracks in those 60 pages? You know, it didn't look like he was trying to, you know, flip the bird at the appellate court. It was a very sincere effort to sentence this person to what he thought was the right punishment. Well, what we believe he went off the tracks is essentially doing what he did the first time around,  which was to overvalue Mr. Walker's sobriety at the expense of all the other sentencing factors. It's true he did it in a much longer decision, but he still effectively undervalued all the other congressional goals and the sentencing factors, general deterrence. Yes, he has a number of pages talking about general deterrence, but his ultimate conclusion is basically that it should be given no weight. And we know that because his conclusion was that all the other sentencing factors led to a no additional prison term sentence. So the only factor that he truly gave weight to was Mr. Walker's sobriety. And as this Court found in Walker 1, that was the abuse of discretion. But he was, I guess, one way to read it is he was concluding that prison time would serve no purpose for this defendant, other than the general deterrent, you know, piece. And, you know, the government's position might be, you know, no prison time is never, you know, that it undervalues general deterrence so significantly that it, you know, it sends a wrong message to the world and, you know, it flouts the conclusions of the Sentencing Commission that it's just too low. But, you know, it's, you know, is this the defendant that deserves no prison time, notwithstanding 12 robberies? And, you know, he's an older defendant. Prison time's been unsuccessful. Is this the Court giving him one last shot? I mean, there's a mid-course review in this case, right? He's got a five-year look back at how the defendant's progressing. I think that my time is up. That wasn't really a question. Okay. It's kind of a stream of consciousness. Go ahead. I'd like to sum up your argument, and then we'll hear from Mr. Walker's counsel. Because the district court had used its discretion, the Court should remand the case for resentencing, and it should assign it to a different district court judge on remand.  Thank you, counsel. Good morning, Your Honors. Let me please the Court. My name is Adam Bridge. I'm here on behalf of my client, John Walker. This Court issued a general remand in Walker 1. In response, the district court conducted a de novo resentencing, took new evidence, including 12 witnesses, holistically reconsidered and reweighed 3553A factors, and imposed a far more punitive sentence. The fact that the government would prefer a different sentence does not make Mr. Walker's arbitrary, capricious, or outside the bounds of permissible choice. Over time, the government's argument has morphed into a discussion of the mandate rule. I think it's important to talk about that progression. After this Court issued its opinion in Walker 1, the district court issued a resentencing order. That's found in Volume 1 at page 19. It asked basically the parties to brief everything, whether it be a statutory factor, Walker 1, other precedent. It asked for the most up-to-date information about Mr. Walker. And in response, Mr. Walker filed a brief addressing the scope of remand. And it argued, we argued, that it was a general remand, that this Court did not specifically cabin the district court's discretion on remand. The government's brief did not discuss the mandate at all. It simply delved into the argument about substantive reasonableness and reasserted its belief that a sentence of imprisonment, a substantial one, 120 months, was the only right sentence to impose. We have a hearing. We have two hearings, actually. There's an evidentiary hearing and then there's a subsequent hearing. At the first hearing, the government seems to agree that we are there at a general remand. There's a quote at Volume 4 at page 573 in which the government says, this is basically a do-over for everybody. Only after reading the Court's tentative decision, and the Court gave everyone some time to digest the 61-page memorandum decision that it had tentatively adopted and then gave us all time to go back and consider objections and things that we might have still to make. And only then, after reading the decision, does the government come back and say, I think the Tenth Circuit was communicating the need to impose a prison sentence. The opening brief, I mean, so I acknowledge that that preserved the issue. Even if the mandate rule, even if it's a general mandate rule permitting de novo review, I mean, Walker 1 cannot be read really any other way than saying that prison time was necessary, appropriate in this case. You know, so that's the way I read it. I mean, Judge Phillips has quoted that language. The panel expected prison time, and it didn't happen. And at that point, the district court knew what he was doing and generated a record to justify the lack of prison time. But we had three respected colleagues that thought prison time was necessary in this case, and it's back up with none. And, you know, that gives me pause because they, you know, what's the difference now then? Is it the hearing? Is it the longer opinion? What's the hook for us? The difference is Mr. Walker himself. When we recommitted ourselves to this resentencing, the court was open to any information, whether it be aggravating or mitigating for Mr. Walker. He just happened to have done very, very well over the course of time between his first sentencing and his second. In fact, as the court points out in its opinion and its findings, there is really an old John Walker and a new one, and they were able to nail down pretty precisely when that difference occurred, and it's when Mr. Walker attended a very lengthy and intensive residential treatment program that basically just changed the way he thinks. And hanging over that, of course, was the prospect of a long term of incarceration, so he had some incentive to do well. Yesterday I had a bank case, bank robbery case, involving the same district judge who imposed a term of imprisonment, and I looked at the 3553A factors here, the need to avoid unwarranted sentencing disparities. I'm uncertain right now why Mr. Walker was given the favorable treatment that he was by the district court, allowed on pretrial and gets a DUI, allowed into treatment, and so forth, when so many other defendants may very well, with that kind of prison time hanging over their heads, have done just as well as Mr. Walker, and yet they're in federal prisons right now. Why should I not be concerned about an unwarranted sentencing disparity between Mr. Walker and any number of other people who would do just as well as Mr. Walker but never got the chance? Well, I think there are a few parts to your question I'll try to answer each of them, Your Honor. When I see your question, there's a first question about pretrial release, and I think there is an issue with Mr. Walker. He was on the verge of being detained, and the court did take a chance on him and gave him pretrial release based mostly on the fact that he had been successful in a prior term of supervised release. In other words, he had proven himself to be a manageable risk in the community, and so the magistrate judge acknowledged that, that he had struggles, but the pretrial standard is not ordinarily perfection. It's whether the person poses a manageable or unmanageable risk, and in Mr. Walker's case, after 30 days of pre-hearing detention, we were able to produce a release plan that satisfied the court that we could reasonably assure the community's safety in his appearance. And so that distinguishes him from a lot of bank robbers who, rightly or wrongly, spend almost all of their time in pretrial detention, and their cases proceed through that path. And the statistics show this. I mean, defendants who are on release, who succeed, they statistically do better on sentencing. And I concede that Mr. Walker's case is on the margins that way. I mean, to get to your second question about disparities, you know, the disparity language in 3553 is born of this notion that people across the country who have done similar things, who are similarly situated, should face the same type of punishment. What Mr. Walker demonstrates is that there are exceptions. Mr. Walker is an extraordinary individual. He took an opportunity that was granted to him through pretrial release, and not only did he take advantage of it, he used it to completely transform his life. And he didn't do that in just appear and provide rhetoric and argument in support of that position. He brought in his counselor that he'd been working with for a couple of years. He brought in his pastor who he'd been working with and volunteering with and leading AA meetings for. And he demonstrated that he had completely metamorphosized into someone different that deserved the opportunities that the district court gave him. The 3553 is concerned with unwarranted disparity. And I think that is a key phrase. If there is a warranted disparity, the 3553A says, okay, put it in the balance. And I think what we see in the 61-page decision is that the district is very conscious of that disparity. It discusses Friedman. It discusses the guidelines. It discusses the Sentencing Commission statistics. It's very conscious of the fact that there is a disparity here. And it carefully considers that in the overall balance, but ultimately decides that the other 3553A factors just simply weigh in favor of the sentence it imposed. That is the definition of what a district judge is supposed to do. That is the job of judging. With respect to the mandate, I just want to make sure that our position on that is clear. We believe the mandate is found at the end of the opinion where it says that Mr. Walker received basically an unreasonably short sentence. And in doing so, the court's decision failed to give any consideration to several different 3553A factors, including retribution, general deterrence, incapacitation, respect to the law. What we have on remand is a significant record on each of those points. With respect to offense and offender characteristics, the district court was careful to point out that the nature and circumstances of Mr. Walker's offense continues to favor incarceration heavily. Bank robbery is a serious crime. As Judge Phillips has pointed out, most bank robbers go to prison. At the same time, I cannot accept the government's position that the offender characteristics, Mr. Walker's characteristics, were static over time. That when he came back for sentencing a year plus later, that those were exact, he was in the exact same position as he was before. The fact is, we know from testimony from the witnesses that were present, they can testify to the remarkable transformation that Mr. Walker had made. The way that he was dealing with problems in the past had fundamentally changed. There were prior, there were discussions about things that had triggered his criminality in the past and how he had changed the way that he deals with those things as a direct result of the program that he had participated in. That's significant. And as Pepper demonstrates, those kinds of changes, and in this case, they're sustained changes over a significant period of time, they inform the court's analysis of other factors. They have to. I mean, when you're talking about, if you were talking about a run-of-the-mill bank robber like Mr. Friedman, who doesn't have any of those compelling circumstances, a sentence like Mr. Walker's would make no sense. But for someone like Mr. Walker, it makes perfect sense. With respect to just punishment, again, the court is very conscious of this and knowing that most bank robbers, including the ones that he sentences commonly, are going to prison. But unlike Mr. Friedman, who was unable to show any really distinguishing characteristics about himself that mitigated his crimes, Mr. Walker has diminished culpability. Slightly so. It's not that he was given free reign to commit crimes because he's a drug addict, but the court rightfully acknowledged that he had a diminished thinking process and he wasn't just out there coldly committing bank robberies out of pure greed. In fact, the court explicitly rejected the notion that he was out there committing bank robberies to get money for a car or for future car payments. He had a lot of bank robberies. I mean, he was a career felon. And he'd been in and out of prison. And he basically is a proven disregarding the law. Yes, he had addiction problems. And they all do, right? And for me, this really boils down to my interpretation of Walker 1 and the general deterrence piece. You know, the district court really is saying, you know, he's saying that sentencing guidelines are not adequately supported in this context. You know, you look at this as a big bell curve and, you know, there are variances on the end, and this variance, like, disappears into the zero. You know, and if we affirm this sentence, you know, we've set a marker for, you know, every judge in America and every circuit, you know, every circuit to make this determination. So that's, you know, that weighs heavily on me in this case. Well, speaking to general deterrence first, Your Honor, I think what the court did, as this court commanded, was that you need to take general deterrence head on and figure out what kind of sentence is going to actually be effective. And there's, you know, we got into the weeds a little bit in the briefing about whether we're talking about exclusive cohorts or drug-addicted career offenders and all. But I get the court's overall point is that, you know, this court could be sending a message to other would-be bank robbers. But the fact is, when we know that there are certain offenders who are effectively deterred by significant prison sentences and those that really aren't, and I think the purpose of 3553A is to instruct judges that, listen, you need to look at the offense, the offender, and you need to look at what type of sentence in this particular case would send the right message. And if I may, let me ask this question. I mean, consistent with 3553A tells us the district court judge to consider deterrence. Now, in order to affirm here, I don't have to agree with every finding of the district court and I don't have to agree with its rationale for why deterrence doesn't work, right? I mean, it just has to be reasonable. Yes, exactly. And I think there's a flip side to the general deterrence question that may be missed in Walker, is that in not affirming the sentence will send a message as well. Mr. Walker put himself out there. He really tried hard to change the way he lives. And he sold his car. He separated himself from his family for over a year. He experienced him and his family both work together to kind of get through this process. And we sent him back to the district court to be sentenced to prison. It tells other people that, you know, don't bother. You know, there's a point at which your past is just going to, there's nothing you can do right now to change your past. I think Mr. Walker demonstrates that that's just not the case. That there are, that redemption is possible. And it heavily weighs on 3553A. And in some cases, while as long as you're not ignoring it, excuse me, I noticed I'm out of time. This is an extraordinary sentence. It is on the margins, but Mr. Mark, Mr. Walker is an extraordinary individual. The court gave careful consideration to this court's mandate and did its best to craft a fair and just sentence. We'd ask that it be affirmed. Thank you, counsel. We appreciate your arguments. It was well briefed and well argued. And the counsel are excused and the case will be submitted.